[Cite as *Allen v. 5125 Peno, L.L.C.*, 2017-Ohio-8941.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO


CAROL J. ALLEN, a.k.a        :        **O P I N I O N**
CARLY ALLEN,

       Plaintiff-Appellant,        :

       **CASE NO. 2016-T-0120**

       - vs -        :

5125 PENO, LLC, d.b.a.        :
EL JALAPENO, et al.,

       Defendant-Appellee.        :


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 00171.

Judgment: Affirmed.


*Ilan Wexler*, Anzellotti, Sperling, Pazol & Small Co., L.P.A., 21 North Wickliffe Circle, Youngstown, OH 44515, and *Richard L. Goodman*, Richard L. Goodman Co., L.P.A., 720 Youngstown-Warren Road, Suite E, Niles, OH 44446 (For Plaintiff-Appellant).

*Kirk E. Roman*, 50 South Main Street, Suite 502, Akron, OH 44308 (For Defendant-Appellee).


THOMAS R. WRIGHT, J.


{¶1} Appellant, Carol J. Allen, appeals the trial court's decision granting summary judgment in favor of appellee, 5125 Peno, LLC ("Peno"). We affirm.

{¶2} In January of 2013, Allen was a patron at appellee's Mexican-style restaurant. After entering the restaurant and upon walking toward her family's table,

Allen slipped and fell on a "grimy, greasy" spot on the floor sustaining injuries. Allen filed suit in January 2015 alleging the restaurant's owner, Peno, was negligent. Following discovery, the trial court granted Peno's motion for summary judgment.

{¶3} Allen asserts two assigned errors, which we address collectively:

{¶4} "The trial erred in granting summary judgment in favor of Defendant-Appellee, 5125 Peno LLC ('El Jalapeno'), by failing to construe the evidence most strongly in favor of the nonmoving party, Plaintiff-Appellant Carly Allen ('Carly Allen'), when it found that Carly Allen 'failed to prove that Defendant was responsible for the grease on the floor or had any actual or constructive notice of any alleged danger associated with the floor where she slipped.' (T.d. 25, paras. 2, 6, and 7).

{¶5} "The trial court erred by granting summary judgment in favor of Defendant-Appellee, 5125 Peno, LLC ('El Jalepeno') if the trial court based its decision in any way upon its finding that Plaintiff-Appellant, Carly Allen ('Carly Allen'), was in any way unable to articulate exactly what caused her fall.' (T.d. 25, paragraphs 2, 4, and 7)."

{¶6} Appellate courts review decisions awarding summary judgment de novo. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 191, 699 N.E.2d 534 (8th Dist.1997). We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins.*

*Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

{¶7} A "material fact" for summary judgment depends on the type of the claim being litigated. *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505 (1986).

{¶8} In order to establish actionable negligence, a plaintiff must prove the existence of a legal duty, the defendant's breach of that duty, and injury proximately caused by the defendant's breach. *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶22 (2002).

{¶9} Allen was a business invitee at the time she fell. As a business invitee, Peno owed Allen a duty of "ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. * * * A shopkeeper is not, however, an insurer of the customer's safety." (Citations omitted.) *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985).

{¶10} A storeowner has a duty to exercise ordinary care and to protect customers by maintaining the premises in a safe condition. This duty includes warning invitees of latent defects of which it has actual or constructive knowledge. *Kornowski v.*

*Chester Props., Inc.,* 11th Dist. Geauga No. 99-G-2221, 2000 WL 895594. *3 (June 30, 2000); *Brymer v. Giant Eagle, Inc.,* 11th Dist. Lake No. 2010-L-134, 2011-Ohio-4022, ¶10.

{¶11} When a business invitee slips and falls as a result of a foreign substance on the floor of a business, the plaintiff has the burden to prove one of three conditions to recover:

{¶12} "(a) that the defendant or his agent was responsible for the substance being on the floor; (b) that the defendant knew of the substance on the floor and failed to remove it; or (c) that the substance was on the floor for a long enough period of time so that the defendant should have known about it and removed it. *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589, 49 N.E.2d 925; *Orndorff v. Aldi, Inc.* (1996), 115 Ohio App.3d 632, 635-36, 685 N.E.2d 1298. See, also, *Parras v. Standard Oil Co.* (1953), 160 Ohio St. 315, 317, 116 N.E.2d 300." *Phares v. Midway Mall Dev. Corp.*, 9th Dist. Lorain No. 97CA006814, 1998 WL 208826, *2; *Brymer*, *supra*, at ¶14.

{¶13} Here, Allen alleges that Peno is liable because it either created the hazard on the floor or should have known of the hazard and either warned of the danger or remedied it.

{¶14} Allen testified to the following:

{¶15} "Q. Was there any reason you were in a hurry at the time to get to the table or to eat at all?

{¶16} "A. No.

{¶17} "Q. Was there anything blocking or obstructing your view of the floor as you walked to the area where you fell?

4

**{¶18}** "A.  No.

**{¶19}** "Q.  I mean other people?

**{¶20}** "A.  No.

**{¶21}** "Q.  Employees or anything like that?

**{¶22}** "A.  No.

**{¶23}** "Q.  What caused you to fall?

**{¶24}** "A.  I believe it was grease of some sort.

**{¶25}** "Q.  Do you know?

**{¶26}** "A.  Exactly what it was, no.  But when I fell, I turned around to see what was on the floor, and I remember doing this with my hands * * *

**{¶27}** "Q.  Touching the floor?

**{¶28}** "A.  Touching the floor.

**{¶29}** "Q.  The tile?

**{¶30}** "A.  The tile.  It was tile, and I remember it was grimy, greasy.

**{¶31}** "Q.  Can you give me an idea at all what the area was in size of this grimy greasy substance which you felt with your hand after you fell?

**{¶32}** "A.  * * * I would say 10, 12 inches.

**{¶33}** "Q.  Like a 10 or 12 inch circle?

**{¶34}** "A.  Yes.

**{¶35}** "Q.  Did it have any type of color?

**{¶36}** "A.  No.

**{¶37}** "Q.  Do you know the substance that you believe caused you to fall, do you know how it got there?

**{¶38}** "A. No, I don't know how it got there.

**{¶39}** "Q. Do you know who caused it or what caused it to get there?

**{¶40}** "A. I don't know anything for sure.

**{¶41}** "Q. Do you know how long it was on the floor where you fell before you fell, this grimy greasy substance?

**{¶42}** "A. No; no."

**{¶43}** Allen's daughter, Ashley Mokros, states in her affidavit that she visited the restaurant on two occasions in the year before her mother's fall and on both prior visits Mokros observed the floors to be greasy and filmy. She does not identify the area in the restaurant that she previously encountered greasy and filmy floors.

**{¶44}** Further, Allen's daughter-in-law, Taylor Rupeka, states in her affidavit that she visited the restaurant on several occasions and that she had slipped two to three times on the floor. She states: "I have previously been a customer of the restaurant of Defendant and have slipped on the surface of the floor between 2 and 3 times prior to Carly [Allen] falling. The floor was not wet but just felt slippery." Rupeka does not give a date or time period when she experienced these slippery floors and does not indicate which part of the restaurant she was in when she slipped.

**{¶45}** Pablo Martinez, the restaurant manager, testified that employees sweep and mop the floor with bleach every morning before opening. Martinez also confirmed that the restaurant always keeps a yellow "wet floor" sign displayed on the floor near the

6

entrance to alert customers of a potentially slippery floor.[1]  It is unclear whether Martinez was present when Allen fell.

**{¶46}** We disagree with Allen's argument that she presented evidence that Peno or his agents created the hazard.  Contrary to Allen's argument, Martinez did not testify that grease spatters all over the restaurant when fajitas are served.  To the contrary, Martinez explained that the restaurant cooks the fajita meat in butter, which does not splatter:

**{¶47}** "Q.  How do you cook the meat for the fajitas?

**{¶48}** "A.  The grill.  You cook the meat first.

**{¶49}** "Q.  In a pot?  * * *

**{¶50}** "A.  No, it's a big grill, like I was talking about * * *.

**{¶51}** " * * *

**{¶52}** "Q.  You have to use oil in order to cook the meat a little bit so it doesn't stick?

**{¶53}** "A.  Not oil.  It's like butter, because oil is like – I don't know.  What is it called when you drop the oil?

**{¶54}** "Q.  It spatters?

**{¶55}** "A.  Spatters all over.

**{¶56}** "Q.  The butter spatters?

**{¶57}** "A.  Butter doesn't.  It cooks perfectly and better taste.  Better flavor too."

---

1. While Martinez testified that the restaurant always maintains a yellow "wet floor" sign near the hostess station, and Allen does not dispute the presence of the sign the night she fell, neither party raises the issue of the sign or whether it was adequate to warn Allen.  Thus, we do not address.

**{¶58}** Although Allen established that the restaurant serves fajitas, a popular dish, on a hot platter, she surmises but does not present evidence that Peno was responsible for the slippery spot causing her fall. This theory requires inference stacking, which is insufficient to defeat summary judgment. *Hughes v. Kroger Co.*, 12th Dist. Clermont No. CA2005-10-099, 2006-Ohio-879, ¶7. "'[N]egligence is a fact necessary to be shown; it will not be presumed.' *Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 388, 92 N.E.2d 9. A negligence claim based on conjecture, speculation, or the stacking of inference upon inference cannot succeed. Id." *Id.*

**{¶59}** Allen likewise failed to come forward with evidence that Peno had constructive notice of the spot on the floor.

**{¶60}** "'[C]onstructive notice requires proof by direct or circumstantial evidence that the store in the exercise of ordinary care had or should have had notice of the condition or foreign substance because of the length of time of its presence on the floor.' *Catanzano v.* [*The Kroger* Company, 1st Dist. Hamilton No. C-930761, 1995 WL 8956] at *6, citing *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 31, 303 N.E.2d 81; *Hardgrove v. Isaly Dairy Co.* (1942), 139 Ohio St. 641, 41 N.E.2d 862; *J.C. Penny Co. v. Robison* (1934), 128 Ohio St. 626, 193 N.E. 401. To demonstrate plaintiff had constructive notice, plaintiff must show that the 'danger had existed for a sufficient length of time reasonable to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.' *Finast Supermarkets* at *3. "'The standard for determining sufficient time to enable the exercise of ordinary care requires evidence of how long the hazard existed.'" *Hudspath v. Cafaro Co.,* 11th Dist. No.2004-A-0073, 2005-Ohio-6911, ¶ 10, quoting *Combs* [*v. First National Supermarkets, Inc.*,

8

105 Ohio App.3d 27,] at 30, 663 N.E.2d 669 (8th Dist.1995), citing *Anaple v. The Standard Oil Co.* (1955), 162 Ohio St. 537, 541, 124 N.E.2d 128." *Brymer v. Giant Eagle, Inc.,* 11th Dist. Lake No. 2010-L-134, 2011-Ohio-4022, ¶19-20.

{¶61} Allen avers based on her experience and her daughter and daughter-in-law's testimony that the floor was perpetually greasy so as to put Peno on constructive notice. However, neither Rupeka nor Mokros described the area in the restaurant where they had previously encountered slippery or greasy floors, and neither identified the slipperiness that they encountered as the same greasy grimy 10 to 12 inch area that caused Allen to slip and fall. Allen testified that she did not know how long the substance had been on the floor before she fell.

{¶62} Moreover, she fell upon entering the dining room just beyond the entryway to the restaurant and the hostess' station. And Martinez testified that this area and all the floors in the restaurant are mopped with bleach daily.

{¶63} The facts presented in Mokros' and Rupeka's affidavits are too indefinite as to time and location and are insufficiently connected to the night in question to establish that Peno had constructive notice of the greasy spot on which Allen slipped and fell in January 2013 to enable us to conclude that the danger Allen encountered "had existed for a sufficient length of time reasonable to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.""" (Citations omitted.) *Brymer, supra.* There is no evidence as to how long the greasy spot had been on the floor that night before Allen encountered it and fell. The fact that other individuals encountered slippery floors in the restaurant the year before Allen's fall does not establish a want of ordinary care by Peno on the night Allen fell.

9

{¶64} "The record contains no evidence as to how long the [substance] existed on the tile floor before appellant fell. Such evidence is necessary to support an inference that appellees breached a duty of ordinary care to invitees, and the absence of such evidence is fatal to appellant's claim. See *McDowell v. Target Corp.,* Franklin App. No. 04AP-408, 2004-Ohio-7196 (affirming summary judgment for premises owner in slip-and-fall case where there was no evidence that the slippery condition was present long enough that defendants should have known about it)." *Caravella v. W.- WHI Columbus Northwest Partners*, 10th Dist. Franklin No. 05AP-499, 2005-Ohio-6762, ¶25.

{¶65} We agree with the trial court's decision. As the moving party, Peno satisfied its initial burden of identifying the portions of the record demonstrating the absence of a genuine issue of fact on Allen's negligence claims. While Allen produced evidence that she slipped on a greasy grimy substance on the floor of the restaurant, she did not come forward with evidence that the restaurant caused the greasy substance to be on the floor or that it had actual or constructive notice of the substance prior to her fall.

{¶66} Accordingly, Allen failed to carry the reciprocal burden setting forth specific facts demonstrating a genuine issue for trial. The trial court properly rendered judgment for Peno, and the trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE., P.J.,

TIMOTHY P. CANNON, J.,

concur.

10